**FRANK LEFITI, Plaintiff,**

**v.**

**FORD MOTOR COMPANY, and DOES I through X, Defendants.**

High Court of American Samoa
Trial Division

CA No. 90-04

May 11, 2005

Before RICHMOND, Associate Justice; LOGOAI, Chief Associate Judge; and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Roy J.D. Hall, Jr. and Jeff Waller
For Defendant, Marie A. Ala'ilima

## ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION AND GRANTING MOTION TO QUASH ORDER FOR SERVICE BY PUBLICATION

### Introduction

On November 5, 1999, Plaintiff Frank Lefiti ("Lefiti"), a resident of American Samoa, purchased a new 2000-year model Ford F-150 truck at a Ford dealership in Honolulu, Hawaii. Lefiti subsequently shipped the truck to American Samoa. On October 14, 2003, Lefiti observed that his truck, parked outside his house, was on fire. He later received an investigative report by the Department of Public safety purporting that the fire was the result of an electric malfunction in the truck's engine compartment. On September 22, 2004, Lefiti filed an action in this Court against Defendant Ford Motor Company ("Ford"), as well as several unidentified defendants for: (1) breach of implied warranty for fitness of use; (2) breach of implied warranty of fitness for particular purpose; (3) breach of implied warranty for merchantability; (4) negligence; (5) strict liability; and (6) "malfunction of vehicle." On October 28, 2004, we granted leave to serve process on Ford outside of American Samoa by publication in accordance with A.S.C.A. §§ 43.0501-.0504. On December 23, 2004, Ford was personally served in Dearborn, Michigan, pursuant to A.S.C.A. § 43.0504.

On March 2, 2005, Ford specially appeared challenging this Court's jurisdiction and its order granting service by publication by motion to dismiss under T.C.R.C.P. 12(c)(2) and (5). For the reasons below, we deny Ford's motion to dismiss but grant its motion to quash the service by publication order.

### Discussion

In order to show that personal jurisdiction exists over a defendant, the plaintiff must show that the long-arm statute of the territory confers jurisdiction, and that the exercise of personal jurisdiction over the nonresident accords with federal constitutional principles of due process. *See, e.g., Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). In this case, Ford maintains that this Court's jurisdiction over it fails to meet minimum due process requirements as well as sufficient contacts under the territorial long arm statute.

### I. Due Process

Due process requires that a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum jurisdiction such that "maintenance

of the suit does not offend traditional notions of fair play and substantial justice." *Patau v. Rosendahl Corporation*, 16 A.S.R.2d 96, 99 (Trial Div. 1990); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagon*, 444 U.S. 286, 291 (1980).

 A court may exercise either general or specific jurisdiction over a nonresident defendant, depending on the nature of the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984). If the nonresident defendant's activities within the jurisdiction are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the forum to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446-47 (1952); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 413 (9th Cir. 1977).

 If, however, the defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on whether the nature and quality of the defendant's contacts in relation to the cause of action. In evaluating whether these minimal contacts warrant "specific jurisdiction" a court will examine whether: (1) the contacts relate to the plaintiff's cause of action or have given rise to it; (2) the contacts involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Vermeulen v. Renault*, 985 F.2d 1534, 1546 (11th Cir. 1993); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir.1986); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985); *World-Wide Volkswagen*, 444 U.S. at 297; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In this case, Lefiti did not purchase the Ford truck in American Samoa, but rather purchased it in Hawaii, and separately brought it to American Samoa. Because Ford's contacts with the territory are not related to Lefiti's cause of action, jurisdiction over Ford must arise from Ford's general, more persistent, but unrelated contacts with American Samoa. Were Ford's only contact with the forum to have been linked to Lefiti's own unilateral activity of shipping his Ford truck into the territory, we would find the quality and nature of Ford's contact to be "so . . . random, fortuitous, [and] attenuated that it cannot fairly be said that [Ford] should reasonably anticipate being haled into court" in American Samoa. *Burger King*, 471 U.S. at 486. Here, however, Ford's own business contacts with American Samoa are substantially and purposefully directed to the territory such that it is not unreasonable to require Ford to

120

submit to the burdens of litigation in the territorial forum.

Ford argues that the Court does not have jurisdiction over it as Ford is neither a citizen nor resident of the territory, is not organized or does not have its principal place of business in the territory, or has not otherwise availed itself of the privileges of the American Samoan forum. We disagree. In *Guyton v. A.M. General,* defendant, a car manufacturer, challenged the court's personal jurisdiction over it stating that it maintained no ties to Pennsylvania because it did not maintain an office, own property, solicit business, or file tax returns in that state. 2001 WL 1623345 (E.D. Pa. 2001) at *2. The court reasoned, however, that because defendant sold vehicles to a dealership in the forum state, contacts were sufficient to warrant general jurisdiction. *Id.* at 3.

> By its nature, the automobile industry requires a manufacturer to maintain contact with its dealerships. As such, continuous and systematic dealings take place between Defendant and its dealerships within the forum State. Therefore, sales by Defendant to its dealerships and subsequently, consumers in the forum State are dealings to be considered for purposes of jurisdiction. Defendant is hard pressed to show that its sales to its dealerships are not continuous and systematic. . . . [B]y regularly placing its product into the stream of commerce for commercial benefit, Defendant has availed itself of the privilege of conducting business in Pennsylvania and invoked the benefits of Pennsylvania law.

*Id.*; *see also World-Wide Volkswagen,* 444 U.S. at 295 (noting that contacts with the forum include whether the defendant solicits business either through salespersons or through advertising reasonably calculated to reach the district, and whether the defendant regularly sells vehicles to customers in the district or indirectly serves or seeks to serve the district's market.).

Lefiti has provided advertisements in which Samoa Motors, Inc. ("Samoa Motors"), a territorial automobile dealership, repeatedly depicts the Ford logo, describes itself as "[t]he only authorized Ford dealer in the Samoa Islands," and purports to offer the sale of "new cars and trucks." Likewise, Lefiti further offers evidence of Ford's own website in which Ford states that "Ford Motor Company can meet your needs wherever you are in the world." Included on this website is American Samoa, in which Ford offers Samoa Motors in the Tafuna Industrial Park as the means in which Ford "can meet needs" of Ford consumers in the territory.

■ When combining Samoa Motors Ford vehicle sales and its assertion as an "authorized Ford dealer" with Ford's own promotion of Samoa Motors, it does not take a large stretch of the imagination to recognize that Ford vehicles do not "randomly" or "fortuitously" arrive at Samoa Motors without Ford's knowing active and continuous direction. It follows then that Ford cannot maintain a business relationship with Samoa Motors and provide vehicles to Samoa Motors in American Samoa with the purpose of benefiting from the local territorial marketplace, and then simultaneously reject any connection with American Samoa in order to conveniently deny local forum jurisdiction once a dissatisfied Ford customer raises a claim. Thus, as in *Guyton*, weighing the factors of fair play and substantial justice, we conclude that as a consequence of Ford's continuous and substantial contacts with American Samoa, and the serious practical difficulty local plaintiffs would face if not allowed to litigate in their own forum, Ford can reasonably anticipate being haled into court here even if the cause of action is unrelated to Ford's forum activities.

## II Territorial Long-Arm Statute

■ We acknowledge, of course, that even if jurisdiction were not constitutionally improper, were our long-arm statute more jurisdictionally restrictive than the scope of general jurisdiction allowed by the Constitution, Ford may be able to prevail in its motion. We conclude, however, that in this case it is not. Pursuant to A.S.C.A. § 3.0103(b)(1), any person, firm or corporation, whether or not a citizen or resident of this territory, who, in person or through an agent, transacts business within this territory, thereby submits, and if a corporation, submits its personal representative, to the jurisdiction of the courts of this territory as to any cause of action, suit or proceeding.

Here, although we agree that Ford is not a citizen or resident of the territory, as noted above, the evidence of Ford's website content, the proclaimed "authorized dealership" status of Samoa Motors, and the sale of new Ford vehicles and products on the island indicates that Ford has "transacted business within the territory" within the meaning of A.S.C.A. § 3.0103(b)(1). *See also Pene v. Bank of Hawaii*, 19 A.S.R.2d 52, 53 (App. Div. 1991) (noting that A.S.C.A. § 3.0103(b) allows the Court to extend personal jurisdiction over persons or businesses on the basis of their contacts with American Samoa). Therefore, as in our constitutional analysis, so too do we conclude that our long-arm statute confers personal jurisdiction over Ford.

### III. Service by Publication

Although § 3.0103(b)(1) submits Ford to the jurisdiction of the Court, Ford further maintains that we improperly authorized service by publication on Ford. Upon further review, we agree. Pursuant to A.S.C.A. § 43.0501, which sets forth the circumstances granting service by publication:

> [w]hen an affidavit is filed that personal service cannot be made upon the defendant within American Samoa, service may be made by publication in any of the following cases:
> (1) actions involving real property in American Samoa or any right, title, interest or estate therein, including, without limiting the fore-going, actions brought for:
> (A) the sale, recovery or partition of real property;
> (B) specific performance of a contract of sale of sale covering real property;
> (C) foreclosure under any mortgage, lien or other encumbrance or charge upon real property; or
> (D) quieting of title to real property;
> (2) an action brought against a nonresident of American Samoa or a foreign corporation, having in American Samoa property or debts owing to such defendant and sought to be appropriated in any way;
> (3) all action where the defendant, being a resident of American Samoa, has departed therefrom with intent to delay or defraud his creditors, or to avoid the service of a notice, or keeps himself concealed in American Samoa with like intent;
> (4) where the action is for a divorce or annulment, or for a change or modification of a decree of divorce or annulment, if the defendant is a nonresident of American Samoa or his resi-dence is unknown.

While it is true in this case that § 43.0501 allows for service by publication in some situations where personal service cannot be made upon a defendant within American Samoa, we note that pursuant to T.C.R.C.P 4(e):

> [w]henever a statute of American Samoa or an order of court thereunder provides for service of summons, or of a notice or of an order in lieu of summons of a party not an inhabitant of or found within American Samoa, service may be made under the circumstances and in the manner prescribed by the statute.

Because, as here, none of the statutory provisions of § 43.0501 allowing for service by publication are applicable under the facts of this case, we cannot extend the statute to allow for Ford to be served by publication.

Nevertheless, although we now agree with the proposition that Ford cannot be served by publication, so too do we acknowledge that alternative avenues of service are available. A.S.C.A. § 30.0310, allows for service of process on "foreign corporations." Section 30.0310 holds that if the agent of a foreign corporation transacting business in American Samoa cannot be found within the territory,

> service of process may be made upon the corporation through the Treasurer of American Samoa by sending the original and 2 copies to him, and on the original of which he shall accept service on behalf of the corporation. He shall retain one copy for his files and send the other by registered mail to the corporation at the address of its home office as shown by the records in his office, which service shall have the same force and effect as if lawfully made upon the corporation.

■ Ford is a corporation organized and existing under the laws of Delaware with its principal place of business in Michigan. Absent a territorial statutory definition, we regard a "foreign corporation" as "[a] corporation that was organized and chartered under the laws of another state, government or country." *See* BLACK'S LAW DICTIONARY 366 (8th ed. 2004) (further noting that "in Arizona, a California corporation is said to be a foreign corporation."). Because Ford may be regarded as a foreign corporation, and because we have determined it has transacted business within the territory, the applicability of § 30.0310 is appropriate.

### Order

Because Ford's contacts with American Samoa conform with the territorial long-arm statute and due process considerations, we deny Ford's motion to dismiss for lack of personal jurisdiction. However, because A.S.C.A. §§ 43.0501-.0504, allowing for service by publication, does not authorize such service for the circumstances presented in this case, we quash our order for service by publication. Lefiti must serve process on Ford in accordance with A.S.C.A. §§ 3.0103 and 30.0310. It is so ordered.